IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE, AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No: <u>2:19-cr-00096</u> |
| ) | JUDGE GREER |
| v. ) | |
| ) | |
| LINSEY JO HYATT ) | |

SENTENCING MEMORANDUM
AND REQUEST FOR VARIANCE ON BEHALF
OF LINSEY JO HYATT

**COLLINS SHIPLEY, PLLC**

**Curt Collins** (BPR # 030111)
102 South Main Street
Greeneville, Tennessee 37743
423.972.4388

*Counsel for Linsey Hyatt*

# Introduction

The defendant, Linsey Jo Hyatt (Ms. Hyatt), by and through counsel, pursuant to Rules 32 and 35 of the Federal Rules of Criminal Procedure; 18 U.S.C. § 3553(a), (e), (f); 28 U.S.C. § 944(j); *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007), *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007), *Spears v. United States*, 555 U.S. 261, 129 S. Ct. 840 (2009), and other authorities set forth herein, respectfully submits this Sentencing Memorandum to the Court setting forth the reasons for a downward variance from the sentence recommended by the advisory sentencing guidelines range, which sentence will be "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. § 3553(a).

As shall be explained in greater detail, Ms. Hyatt requests that she be sentenced to 70 months, followed by three years of supervised release, on her plea to Count One's conspiracy to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). The requested sentence of 70 months takes into account (a) Ms. Hyatt's "Safety Valve" eligibility and (b) the requested variance based on Ms. Hyatt's history and characteristics.

## I. Procedural Background

The underlying facts in this case concerned Ms. Hyatt's involvement in the distribution of methamphetamine for a seven-month period (June of 2018 to December, 2018).

On August 9, 2019, the Grand Jury for the Eastern District of Tennessee returned an eleven-count indictment against Ms. Hyatt and others. (Doc. 3). Ms.

Hyatt was arrested and appeared at her initial appearance on August 15, 2019. (Doc. 5). Ms. Hyatt was ordered to be detained pending trial, and she has been in continuous federal custody since that time. (Doc. 8).

On September 14, 2020, Ms. Hyatt appeared before this Court and entered a guilty plea, pursuant to an agreement with the government, to Count One, Conspiracy to distribute 50 grams of more of actual methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A). (Doc. 462).

Ms. Hyatt has accepted responsibility for her crimes. She has also fully cooperated with Government in every way requested. This memorandum is submitted to explain why Ms. Hyatt believes that an effective sentence of 70 months, followed by three years of supervised release, is an appropriate sentence, and sufficient but not greater than necessary to comply with the purposes set out in 18 U.S.C. § 3553(a)(2).

## II. 18 U.S.C. § 3553(a) Sentencing Factors

Section 3553(a) lists seven factors that a sentencing court must consider. The first factor is a broad command to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor requires the consideration of the general purposes of sentencing, including the need for the sentence imposed—"(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "(B) to afford adequate deterrence to criminal conduct"; "(C) to protect the public from further crimes of the defendant"; and "(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional

treatment in the most effective manner." *Id*. § 3553(a)(2). The third factor pertains to "the kinds of sentences available," *id*. § 3553(a)(3); the fourth, to the Sentencing Guidelines, *id*. § 3553(a)(4); the fifth, to any relevant policy statement issued by the Sentencing Commission, *id*. § 3553(a)(5); the sixth, to "the need to avoid unwarranted sentence disparities," *id*. § 3553(a)(6); and the seventh, to "the need to provide restitution to any victim," *id*. § 3553(a)(7). Preceding this list is the overriding directive to "impose a sentence sufficient, but not greater than necessary," to achieve the sentencing purposes.

### III. Applying the Sentencing Factors

The United States Supreme Court has directed that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49, 128 S. Ct. 586 (2007) (citation omitted). The district court must then consider the arguments of the parties but "without any thumb on the scale favoring a guideline sentence," *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007). Rather, district courts are obliged to consider all of the §3553(a) factors to fashion the appropriate sentence; that is, make an individualized assessment based on the facts presented to arrive at a sentence that is sufficient but not greater than necessary. *See* 18 U.S.C. § 3553(a).

### IV. Advisory Sentencing Guidelines

The Presentence Investigation Report for Ms. Hyatt was prepared on December 17, 2020. (Doc. 623). United States Probation Office at that time

calculated an advisory guideline range of 87 to 108 months. That range was based on a total offense level of 29 and Criminal History Category I. The statutorily authorized minimum term of imprisonment is ten years; however, Ms. Hyatt meets the criteria set forth in 18 §§ 3553(f)(1)-(5), and is "safety valve" eligible. Therefore, this Court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence.

However, if this requested variance is granted and a two-level reduction in Ms. Hyatt's advisory guideline range is implemented, a new guideline range of 70-87 months becomes applicable.

As for the Presentence Report, there are no pending objections requiring a ruling from the Court.

## V. History and Characteristics of Ms. Hyatt

Ms. Hyatt's role in this offense reflects what she knew and saw throughout her adolescence as well as her adulthood. As discussed further below, Ms. Hyatt is a substance abuser and has abused substances since she was 15 years old. Furthermore, Ms. Hyatt's personality and addictions led her co-conspirators to take advantage of her, assisting her down the path of criminal activity.

Prior to her involvement in the conspiracy causing her to be before this Court, Ms. Hyatt was a productive member of society. She is confident she can return to a positive, fruitful life upon her release. Ms. Hyatt was a Licensed Practical Nurse (LPN), having completed her training and education for the LPN certification at Tennessee College of Applied Technology. Additionally, Ms. Hyatt was studying to be a fully licensed Registered Nurse (RN).

Additionally, Ms. Hyatt was always dedicated to caring for others, as evident by her career in healthcare. Ms. Hyatt was a nurse with Procare Home Health Services and Bristol Health and Rehabilitation, and worked there until January of 2018. It is evident that Ms. Hyatt is and was capable of maintaining steady employment, and being a fully contributing member of society. Unlike many of the Defendants this Court sees, Ms. Hyatt has the education, experience, and ambition to be a success story upon her release.

As is a plague on our society, the plight of drug addiction took hold of Ms. Hyatt's life. This addiction led Ms. Hyatt to begin to desperately seek acceptance and validation with others, who ran in the "wrong circles." The slippery slope soon led to her co-conspirators taking advantage of Ms. Hyatt's addiction and accommodating personality. Her good nature and good-will made her an easy target, and in the blink of a desperate eye, Ms. Hyatt was engaged in a conspiracy to distribute drugs. What was a poor decision on her part stemmed from years of substance abuse that skewed Ms. Hyatt's manner of thought. This in no way is intended to be construed as an excuse for her conduct, but an attempt to allow the Court to delve into Ms. Hyatt's psyche and gauge, not excuse, her conduct. Addiction, by its nature, is overpowering, and coupled with the influence of others and desperation for acceptance, presents a formidable foe. It shapes and molds one's thinking. It tips and twists one's perspective on what is right, or, and more importantly, what is wrong.

Ms. Hyatt's history with illicit substances began at 15 years old, when she first began drinking alcohol and smoking marijuana. Cocaine was introduced into

6 of 10
Case 2:19-cr-00096-JRG-CRW Document 658 Filed 01/18/21 Page 6 of 10 PageID #: 3468

her life at the age of 20, and was steady presence until she was nearly 30 years old. Ms. Hyatt experimented with ecstasy, hallucinogens, and benzodiazepines, while also using opioids three to four times per week. This concoction ultimately led to her use of methamphetamine beginning at age 32 and continuing until her arrest.

As for Ms. Hyatt's mental health, she suffers from depression, and takes medication to help her in managing her symptoms. Growing up and into her teenage years, Ms. Hyatt's life was "fairly normal" until her parents separated when she was 13. Her father was absent for extended periods and apparently was quite deep in the local "party scene." Her father remarried when she was 15 years old and the marriage was crushing to Ms. Hyatt as her and her step mother had a strained relationship, and Ms. Hyatt believed her father chose his new wife over his family and children.

Ms. Hyatt became pregnant with her daughter, Kelsey, when she was 15 years old. The pregnancy during this formative time of her life fueled Ms. Hyatt's desire to further her education and provide for her daughter; however, her addiction eventually backed Ms. Hyatt into a corner, and she made the unwise decision to turn to narcotics to soothe her mind, and as a source of additional income. Ms. Hyatt maintains a great relationship with Kelsey, and also has a great relationship with her son, Aden, who lives in Bluff City, Tennessee.

Addiction can be beaten and lives can be turned around with the proper treatment and rehabilitation. Ms. Hyatt can be rehabilitated and can return to being a contributing member of society. Not all stories of addiction and crime end poorly. Ms. Hyatt is confident she can be a story of hope, redemption, and strength.

## VI. Nature and Circumstances of the Offense

Although Ms. Hyatt takes full responsibility for her unwise actions in this offense, her participation was one of desperation while supporting her addiction and her desire to earn extra money. She is well aware of the community she affected by being involved with such criminal activity. She shows nothing but remorse and constant disappointment for her past actions.

## VII. Just Punishment and Adequate Deterrence

While the social debate continues regarding incarceration as an effective general deterrent to drug use and drug trafficking, it is clear a period of incarceration for Ms. Hyatt is required to reflect the seriousness of her offenses. Moreover, Congress has expressly precluded probation as a sentencing option for this offense. *See* 21 U.S.C. § 841(b)(1)(B); USSG § 5B1.1(b)(2).

## VIII. Acceptance of Responsibility

Ms. Hyatt has accepted responsibility for her wrongdoing and is genuinely remorseful for her illegal conduct. She has grown up and matured to an immense degree since her arrest and subsequent detention. She realizes the opportunity she has in front of her to be a success story, and looks forward to being an example for others on how to turn your life around.

## IX. Downward Variance: Linsey Hyatt's History and Characteristics

Ms. Hyatt is requesting this Court grant her a two-level variance from offense level 29, with an advisory guideline range of 87-108 months, to a level 27 with an advisory guideline range of 70-87. A sentence at the bottom of this guideline range is "sufficient, but not greater than necessary" to effectuate the aims of the factors

established in 18 U.S.C. § 3553(a).

From the outset, Ms. Hyatt has zero criminal history points. Aside from a domestic dispute to which she received probation, Ms. Hyatt has never been in criminal trouble prior to this case.

Furthermore, Ms. Hyatt is educated and experienced in the healthcare field. She has a marketable skill and certification that will enable her to smoothly transition back into the working world. For several years, she worked as an LPN in home health and rehabilitation settings, and was by all accounts, a great caregiver.

From the outset of the conspiracy, Ms. Hyatt was taken advantage of and essentially "used" by her conspirators. While not an excuse for her conduct, the Court should consider this factor when deciding whether to grant her requested two level variance.

Ms. Hyatt is an East Tennessee Native, and will reside in Bluff City, Tennessee upon her release from incarceration. Ms. Hyatt is the mother of a school aged child, Aden, whom also lives in Bluff City, and she looks forward to being a positive impact in Aden's life, showing him that past failures do not define or preclude future successes.

## XI. Conclusion

Ms. Hyatt respectfully requests this Court grant this Motion for a Two-Level Downward Variance, establishing a new offense level of 27 and advisory guideline range of 70 to 87 months, and then impose a bottom of the guideline sentence. Ms. Hyatt further requests that she receive credit for the time she has served since her arrest.

As the Supreme Court observed years before *Booker* and its progeny, when application of the sentencing guidelines remained mandatory:

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

*Koon v. United States*, 518 U.S. 81, 112 (1996). Here, that unique study of human failings demonstrates that a 70-month sentence should be imposed.

Finally, due to their offered programs, Ms. Hyatt requests this Court to recommend to the Bureau of Prison that she serve her sentence of incarceration at one of the following facilities:

    a.     FCI Aliceville in Alabama. FCI Aliceville offers work programs, drug programs, along with vocational training.

    b.     FCI Danbury in Connecticut. FCI Danbury offers a PTSD-Bridge program, drug abuse rehabilitation, and a children's visiting day.

    c.     FCI Coleman in Florida. FCI Coleman offers health/psychology services, drug rehabilitation programs, and vocational training.

Respectfully submitted this 18th day of January, 2021.

By: s/Curt Collins
Curt Collins, BPR # 030111
COLLINS SHIPLEY, PLLC
102 South Main Street
Greeneville, TN 37743
423.972.4388
curt@collinsshipley.com

10 of 10
Case 2:19-cr-00096-JRG-CRW   Document 658   Filed 01/18/21   Page 10 of 10   PageID #: 3472